IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Case No.:

JUSTIN GRANT ALTUS,
and ONE LOOP LLC,

Plaintiffs,

v.

ZACHARY EICHELBERGER,

Defendant.

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiffs, Justin Grant Altus and One Loop LLC (collectively, "Plaintiffs"), for their Complaint against Defendant Zachary Eichelberger ("Defendant" or "Mr. Eichelberger"), allege as follows:

## NATURE OF ACTION

1.      Plaintiff One Loop LLC is a Florida limited liability company and Plaintiff Justin Grant Altus is the sole shareholder and officer of One Loop LLC. Plaintiffs design and produce specialty desktop sculptures, often based upon mathematical and engineering principles. Rather than operating in a brick and mortar shop, beginning in or about May 2017, Plaintiffs have successfully crowd-funded a number of products through crowdfunding[1] campaigns on sites, such as Kickstarter.com.

---

[1]      "Crowdfunding" refers to "the practice of obtaining needed funding (as for a new business) by soliciting contributions from a large number of people especially from the online community." "Crowdfunding," MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/rip-off.

2.      Beginning in or about January 2019, Defendant Zachary Eichelberger attempted to compete with Plaintiffs by marketing desktop sculptures on Kickstarter.com. Mr. Eichelberger promoted products via Kickstarter.com that imitated products from earlier campaigns run by Plaintiffs.  Mr. Eichelberger sent a private message to Plaintiffs, stating that Mr. Eichelberger had "been following [Plaintiffs'] projects for a while now" and that Plaintiffs' work "actually inspired [Mr. Eichelberger] to start creating mathematical shapes." However, Mr. Eichelberger's crowdfunding campaigns received a fraction of the financial success and number of customers as Plaintiffs' campaigns.

3.      To bootstrap his inferior campaigns, in 2020, Mr. Eichelberger made provably false statements against Plaintiffs in a variety of public forums, including on Reddit.com and on the comment sections of Kickstarter campaigns run by Plaintiffs. Although he privately admitted to being inspired by Plaintiffs' products, Mr. Eichelberger falsely publicly accused Plaintiffs' products of being a "blatant rip off" of Mr. Eichelberger's products, accused Plaintiffs' of "constantly copying [Mr. Eichelberger's] designs," and accused Plaintiffs of copying his "campaign down to the size names… and video shots."

4.      Mr. Eichelberger attempted to bolster support for these false public attacks by claiming intellectual property protections and expertise where he had none. For example, Mr. Eichelberger claimed that he had filed a copyright application for one of his sculptures, and that Plaintiffs infringed such copyright application. As of the date of this filing, the United States Copyright Office Public Catalog has no record of any filings by Mr. Eichelberger. Similarly, Mr. Eichelberger also claimed he had "filed over a dozen patents and been awarded most of them." Per the United States Patent and Trademark Office, as of the date of this filing, Mr. Eichelberger has never been awarded any patent nor has any published filed patent.

5.      When confronted by Plaintiffs' counsel, Mr. Eichelberger did not cooperate with Plaintiffs' counsel's requests for an appropriate apology and thorough retraction, and instead wrote a single comment, buried in the comment section of one of his Reddit.com posts, stating that he "publicly apologize[d] and disavowed my previous statements." However, Mr. Eichelberger did not recant his statements to any of the individuals whom Mr. Eichelberger initially directed his published statements to and did not delete his Kickstarter.com posts.

6.      This action follows, involving Lanham Act claims and common law tort claims under Florida law, including libel, tortious interference with business relations, tortious interference with contractual relations, unfair competition, and trade libel.

7.      In order to fully compensate Plaintiffs for the loss of sales, perpetual reputational harm, emotional distress, and mental anguish suffered as a result of Mr. Eichelberger's false attacks, this action seeks actual damages in excess of One Million Dollars ($1,000,000) and punitive damages in excess of Three Million Dollars ($3,000,000).

## PARTIES, JURISDICTION AND VENUE

8.      Plaintiff Justin Grant Altus ("Mr. Altus") is a citizen of the state of Florida and resides in West Palm Beach, Florida.

9.      Plaintiff One Loop LLC ("One Loop") is a Florida Limited liability company based in West Palm Beach, Florida.

10.      On information and belief, Defendant Zachary Eichelberger ("Mr. Eichelberger") is citizen of the state of Iowa and resides in Davenport, Iowa.

11.     Mr. Eichelberger is subject to jurisdiction in Florida per Fla. Stat. § 48.193(1)(a) because Mr. Eichelberger operated, conducted, engaged and/or carried on a business in Florida and committed a tortious act in Florida.

12.     Mr. Eichelberger is also subject to jurisdiction per Fla. Stat. 48.193(2) because he engaged in substantial and not isolated activity within this state. Upon information and belief, Mr. Eichelberger advertised, solicited, and sold his products within this state.

13.     This Court has subject matter jurisdiction over this action pursuant to both 28 U.S.C. §§ 1331 (federal question), 1332 (diversity of citizenship), and 1367 (supplemental). The federal question flows from the Count 5 violation of 15 U.S.C. § 1125(a)(1).

14.     As to diversity, the parties are citizens of different states and the amount in controversy exceeds $75,000.

15.     Venue is proper for the Defendants pursuant to 28 U.S.C. § 1391(b)(2).

16.     Mr. Eichelberger transacts business in the State of Florida, including through the solicitation of customers and/or donors residing in the State of Florida. Mr. Eichelberger knew or had reason to know that Plaintiff Justin Grant Altus was located in Florida. Mr. Eichelberger knew or had reason to know that Plaintiff One Loop, LLC, operating under the tradename "AltDynamic," was located in Florida. Mr. Eichelberger knew or had reason to know that some of Plaintiffs' customers were located in Florida. Mr. Eichelberger directed his statements to Plaintiffs' customers who were located in Florida. Mr. Eichelberger published the online statements identified herein in this district. Mr. Eichelberger intentionally sought and obtained benefits from his tortious acts in this district.

17.     Plaintiffs suffered substantial and perpetual reputational and emotional harm in this district.

18.     Defendant caused harm to plaintiffs here in this jurisdiction but also directed his actionable statements to Plaintiffs' current and future customers in the Southern District of Florida, thereby creating personal jurisdiction over Defendant.

## FACTUAL BACKGROUND

19.     Plaintiffs utilize the "AltDynamic" tradename to market their products, including "altdynamic.com."  Plaintiffs' specialty products require significant up-front planning costs and require technical, artistic, and spatial acuity to engineer and design. The specialty products discussed herein are produced by CNC-machining.[2] Plaintiffs' successful Kickstarter.com campaigns enable Plaintiffs to market their products directly to customers that identify with and appreciate the skill and technique involved in creating these pieces. Plaintiffs repeated successes in planning and completing the production of these pieces garnered a strong following of devoted customers who each eagerly anticipated future launches and often pledged hundreds of dollars in anticipation of the final product. Plaintiffs were therefore well-established in this marketplace.

20.     On February 18, 2018, Plaintiffs began a Kickstarter campaign for an Orbiform desktop sculpture (the "February 18, 2018 Orbiform Campaign"). An Orbiform is a mathematically-perfect solid of constant width, visually appearing to have three edges, and it is not easily fabricated. By the conclusion of the Kickstarter campaign on April 8, 2018, this campaign succeeded in garnering $126,296 in contributions from 1,629 people. Based on the success of the product, Plaintiffs financed auxiliary items for the Orbiform product. Customers continue to place orders for the Orbiform product and these auxiliary items via Plaintiffs' website, altdynamic.com, even years after this campaign ended.

---

[2]     Computer numerically controlled machines, or CNC machines, are electro-mechanical devices that can manipulate tools around a varying number of axes.

21.     On November 1, 2018, Plaintiffs began a Kickstarter campaign for a PentaOrbiform desktop sculpture (the "November 1, 2018 PentaOrbiform Campaign"). The PentaOrbiform also has a constant width and visually appears to have five-edges when viewed straight-on, while an Orbiform appears to have three edges when viewed straight-on. By the conclusion of the Kickstarter campaign on December 28, 2018, this campaign succeeded in garnering $63,592 in pledges from 971 people. Based on the success of the product, Plaintiffs financed auxiliary items for the PentaOrbiform product. Customers continue to order the PentaOrbiform product via Plaintiffs' altdynamic.com website after the Kickstarter campaign ended.

22.     On January 7, 2019, Mr. Eichelberger began a Kickstarter campaign for a "3LO: mathematical machined beauty" ("Mr. Eichelberger's 3LO Campaign"). This campaign offered a polygon-based shape similar in appearance and mathematical construction to the three-edge Orbiform that Plaintiffs sold during the February 18, 2018 Orbiform Campaign.

23.     On April 20, 2019, Plaintiffs began a Kickstarter campaign for a Möbius strip desktop sculpture (the "April 20, 2019 Möbius Campaign"). Plaintiffs tag-lined the campaign "The world's first fully CNC machined Möbius Strip," because other machined Möbius strip products in the marketplace required additional assembly after the CNC-machining process or required surface features, such as screw holes, mounting holes, or hand-carved areas. A Möbius strip is a mathematical, two-dimensional concept, which has a surface with only one side and only one boundary curve.

24.     On August 5, 2019, shortly after the conclusion of Plaintiffs' April 20, 2019 Möbius Campaign, Mr. Eichelberger began a Kickstarter titled "Bi-Stein: The World's First CNC Machined Steinmetz Bicylinder" ("Mr. Eichelberger's Bi-Stein Campaign"). In his campaign, Mr. Eichelberger offered several products, including a CNC machined item that Mr. Eichelberger

referred to as a "Möbius Ring/Strip." Mr. Eichelberger's Bi-Stein Campaign also included a polygon-based shape similar in appearance and mathematical construction to the Orbiform, as in Mr. Eichelberger's prior 3LO Campaign.

25.     Mr. Eichelberger knew of Plaintiffs' Möbius strip product and the April 20, 2019 Möbius Campaign because, on August, 10, 2019, Mr. Eichelberger posted on Reddit, "I made … the world's first CNC machined Möbius strips made of copper, stainless steel, and brass (someone beat me to the first one ever 2 months ago by using aluminum)." Mr. Eichelberger was referring to the April 20, 2019 Möbius Campaign, which completed on June 10, 2019.

26.     Further, Mr. Eichelberger also demonstrated his knowledge of Plaintiffs' other pre-existing campaigns because, on Mr. Eichelberger's Bi-Stein Campaign Kickstarter webpage, Mr. Eichelberger stated on August 6, 2019 that several of his product offerings were "made by others in the past."

27.     By its conclusion on October 4, 2019, Mr. Eichelberger's Bi-Stein Campaign garnered only 110 customers and only $7,045 in pledges. Mr. Eichelberger's Bi-Stein Campaign was therefore less than 10% as effective at raising revenue and securing individuals to pledge money to that campaign than Plaintiffs' earlier April 20, 2019 Möbius Campaign, which had raised $86,698 from 1,562 customers.

28.     On September 21, 2019, Plaintiffs began a Kickstarter campaign for a skeletal Dodecahedron desktop sculpture based on the 15th century illustrations of Leonardo da Vinci (the "September 21, 2019 Dodecahedron Campaign"). By the conclusion of the Kickstarter campaign on November 4, 2019, this campaign succeeded in garnering $41,860 in pledges from 629 people. Based on the success of the product, Plaintiffs financed auxiliary items for the skeletal

Dodecahedron. Customers continue to order the skeletal Dodecahedron via Plaintiffs' altdynamic.com website after the Kickstarter campaign ended.

29.     On February 4, 2020, Plaintiffs conducted a Kickstarter campaign for machined solid spheres (the "February 4, 2020 Sphere Campaign"). This campaign operated until March 31, 2020, during early months of the world-wide COVID-19 pandemic. Even with stock markets crashing and consumer spending drastically decreasing nationally and globally, Plaintiffs' February 4, 2020 Sphere Campaign succeeded in garnering $48,203 in pledges from 594 people. Based on the success of the product, Plaintiffs financed auxiliary items for the machined solid spheres. Customers continue to order the sphere via Plaintiffs' altdynamic.com website after the Kickstarter campaign ended.

30.     Mr. Eichelberger was aware of Plaintiffs' February 4, 2020 Sphere Campaign. On February 4, 2020, Mr. Eichelberger sent a private message ("Mr. Eichelberger's February 4, 2020 Message") to Plaintiffs via the Kickstarter messaging platform. *See Exhibit A*.

31.     This February 4, 2020 message stated that Mr. Eichelberger has "been following [Plaintiffs'] projects for a while now" and that Plaintiffs' work "actually inspired [Mr. Eichelberger] to start creating mathematical shapes." This message verified that Mr. Eichelberger actively watched several, if not all, of Plaintiffs' campaigns, including, *inter alia*: the February 18, 2018 Orbiform Campaign; the November 1, 2018 PentaOrbiform Campaign; the September 21, 2019 Dodecahedron Campaign; the April 20, 2019 Möbius Campaign, as mentioned; and now the February 4, 2020 Sphere Campaign. Further, Mr. Eichelberger admits in this message that he based his Kickstarter campaigns on inspiration from Plaintiffs' Kickstarter campaigns.

32.     On February 5th, 2020, Mr. Eichelberger began a Kickstarter campaign titled "The Evolution of Revolution: Reuleaux Polygons Collection." The products offered included a (1)

"Reuleaux Polygon of Infinite Sides (Sphere)," which was approximately the same size and visually similar to the sphere from Plaintiffs' February 4, 2020 Sphere Campaign, (2) a polygon-based shape which was approximately the same size, and similar in appearance and mathematical construction to the Orbiform from Plaintiffs' February 18, 2018 Orbiform Campaign, and (3) a polygon-based shape which was approximately the same size, and similar in appearance and mathematical construction to the PentaOrbiform from Plaintiffs' November 1, 2018 PentaOrbiform Campaign.

33.     In September 2019, Plaintiffs began planning the launch of a Kickstarter campaign to crowdfund a CNC-machined tesseract. A tesseract, as defined more fully below, constitutes another highly specific and well-known type of mathematical shape. Plaintiffs created a three-dimensional Computer-Aided Drafting model to evaluate design considerations and manufacturing requirements for said CNC-machined tesseract. Plaintiffs told customers that a tesseract Kickstarter campaign would likely launch in "summer 2020 or around there."

34.     On March 24, 2020, Plaintiffs contracted with Treatstock to coordinate printing plastic prototypes of the tesseract. *See Exhibit B*. Then, on April 29, 2020, Plaintiffs contracted with an industrial goods and services company to provide anodizing services for several of machined metal tesseract prototypes.

35.     On May 7, 2020, Plaintiffs purchased marketing materials to advertise and suggest a tesseract form as his next project on Kickstarter. Plaintiffs' marketing material strongly implies that the next project will be a tesseract sculpture. Plaintiffs shipped the marketing materials to Sphere customers in May 2020. *See Exhibit C*.

36.     The term 'tesseract' was coined and used to define a four-dimensional hypercube, at least as early as the late 1800s. Various physical three-dimensional models of tesseracts have

been made in various mediums. This variability exists because it is conceptually and physically impossible to fully depict a "tesseract" in three dimensions.

37.     Popular representations of a tesseract include:



*Tesseract Rendering[3]*



*Screenshot from a video of Carl Sagan describing a 4th Dimension Tesseract[4]*

38.     Plaintiffs took photographs of part of the tesseract prototype and sent one of the photographs via Kickstarter on May 13, 2020 to the 594 people who backed the February 4, 2020 Sphere Campaign.

---

[3]     Howard Stark "My Greatest Creation... Is You" (Scene) - Iron-Man 2 (2010) Movie CLIP HD (Oct 5, 2017), https://youtu.be/reQs3g5LO8E?t=36.

[4]     Higher 4th Fourth dimension Explained by Dr. Carl Sagan, Foundation for the Law of Time (March 7, 2013), http://galacticspacebook.com/video/higher-4th-fourth-dimension-explained-by-dr-carl-sagan.

39.     On May 28, 2020, after Plaintiffs had already created, photographed, and advertised Plaintiffs' tesseract product, Mr. Eichelberger began a Kickstarter campaign titled "HYPER", with the tagline "The world's first CNC machined hypercube/tesseract!" ("Mr. Eichelberger's Hyper Campaign"). *See Exhibit D.* Mr. Eichelberger's Hyper Campaign raised $6,078 via 86 customers. Mr. Eichelberger's Hyper Campaign offered a single sized hypercube/tesseract, which had a length/width/height of 1.5 inches (38.1 millimeters).

40.     Mr. Eichelberger's machined hypercube/tesseract visually resembles classically known interpretations of a tesseract, including, for example, those shown above.

41.     On June 1, 2020 Plaintiffs sent a second advertising image of the hypercube to the 594 people who backed Plaintiffs' February 4, 2020 Sphere Campaign.

42.     On June 15, 2020, Plaintiffs began a Kickstarter campaign for Plaintiffs' CNC machined tesseract product (the "June 15, 2020 Tesseract Campaign").  *See Exhibit E.* Plaintiffs titled the campaign "The Tesseract: A glimpse of 4D Hyperspace" and tag-lined the campaign "The world's first fully CNC machined Perspective Hypercube." Notably, Defendant's project was never a "perspective hypercube," which has a specific shape and design that Defendant did not use.

43.     Plaintiffs' June 15, 2020 Tesseract Campaign offered three sizes including: a "Tesseract Mini", which was sized 1.9 inches (48 millimeters); a "Tesseract Mighty", which was sized 2.4 inches (61 millimeters); and a "Tesseract Mega", which was sized 2.9 inches (74 millimeters). Accordingly, Plaintiffs' June 15, 2020 Tesseract Campaign did not offer products sized 1.5 inches (38.1 millimeters), which is the only size that Defendant offered.

44.     Plaintiffs' tesseract product differs from Mr. Eichelberger's product. The sizes and proportions of the design elements are different, including the interior and exterior cubes and the

connecting winged beams. Moreover, Plaintiffs' tesseract product is fully-machined, including the finishing; that is, even the edges of each tesseract are finished with machine chamfering. Defendant's product did not have these features or dimensions.

45.     The June 15, 2020 Tesseract Campaign offered the tesseract product in several anodized colors, and raw machined aluminum. By contrast, Mr. Eichelberger's Hyper Campaign provided only an un-anodized raw aluminum.

46.     Plaintiffs' initial campaigning was highly successful. On the June 15, 2020 launch date, Plaintiffs raised over $15,000, which was the highest level of financial contributions on a launch day for any of Plaintiffs' Kickstarter campaigns, and greatly surpassed the just over $5,000 funding that Mr. Eichelberger's Hyper Campaign raised in the more than two weeks prior to the June 15, 2020 Tesseract Campaign launch date.

## TORTIOUS ACTS BY DEFENDANT ZACHARY EICHELBERGER

47.     On June 18, 2020, Mr. Eichelberger began an attempt to dissuade individuals from contributing to Plaintiffs' June 15, 2020 Tesseract Campaign by making statements regarding Plaintiffs and their products that Mr. Eichelberger knew to be false. Mr. Eichelberger promoted these statements towards current and prospective customers of Plaintiffs, in addition to customers of his own. In addition to keeping individuals away from Plaintiffs' campaign, Mr. Eichelberger wanted to redirect individuals to Mr. Eichelberger's Hyper Campaign.

### Mr. Eichelberger's June 18, 2020 Kickstarter Statements

48.     Mr. Eichelberger backed Plaintiffs' June 15, 2020 Tesseract Campaign with the sole purpose of defaming Plaintiffs. Mr. Eichelberger backed the June 15, 2020 Tesseract Campaign for a nominal amount so that he could directly contact and advertise to Plaintiffs' customers. Defendant tortiously interfered with Plaintiffs' existing contractual relations and

prospective economic advantages. At approximately 5:44pm on June 18, 2020, Mr. Eichelberger published the following libelous statements on the publicly-accessible Kickstarter.com webpage for the June 1, 2020 Tesseract Campaign ("Mr. Eichelberger's June 18, 2020 Kickstarter Comments"). *See Exhibit F.*



49.     This statement, which was viewable by anyone, including people who had already backed the project, was false in several respects.  First, Plaintiffs' June 1, 2020 Tesseract Campaign was not a "rip off" of anyone or anything.  Instead, it was a superior expression of a mathematical principle that had existed in the public sphere for centuries. Second, the United States Copyright Office has no public record of Mr. Eichelberger's supposed copyright filing. Third, Kickstarter has never taken any action on the supposed copyright infringement allegation. Fourth, rather than seeking legal action, when confronted by Plaintiffs' counsel about the legal consequences of these

false statements, Mr. Eichelberger unbacked Plaintiffs' Kickstarter, rendering Mr. Eichelberger unable to continue commenting on the June 15, 2020 public webpage.

50.      Mr. Eichelberger published nearly identical false statements on the June 15, 2020 Tesseract Campaign public webpage comment section by repeatedly publishing this identical statement in response to unrelated comments and inquiries by users who had already formed contractual relations with Plaintiffs and pledged to contribute to the June 15, 2020 Tesseract Campaign.

51.      Mr. Eichelberger published other false and libelous statements, including a statement directed to contributor with the username, 'Cannonball', alleging (1) the June 15, 2020 Tesseract Campaign "rip[ped] me off in the last week of my project"; (2) "Alt Dynamic has been constantly copying other designs I have done as well (Mobius strip, Pentagon Reuleaux polygon, Heptagon Reuleaux polygon, infinite Reuleaux polygon, and now hypercube)"; (3) "Alt Dynamic is literally saying 'the world's first CNC machined tesseract' when [Mr. Eichelberger's] Kickstarter has been live for a month;" and (4) "Alt Dynamic literally copied my campaign down to the size names I use for other projects and video shots."

52.      By contrast to this published statement, Mr. Eichelberger sold the Reuleaux polygon pentagon and triangle shapes, the Mobius strip, and the infinite Reuleaux polygon products on Kickstarter after Plaintiffs' corresponding campaigns. In fact, in his prior February 4, 2020 Message directed to Plaintiffs, Mr. Eichelberger admitted that he had been watching Plaintiffs' campaigns and was "inspir[ed]" by them. Accordingly, Mr. Eichelberger made this knowingly-false public statement with malicious intent to bolster his reputation, to harm Plaintiffs' reputation, to persuade Plaintiffs' contributors to withdraw their financial contributions from

Plaintiffs' June 15, 2020 Tesseract Campaign, and/or cause Plaintiffs' customers to back Mr.
Eichelberger's Hyper Campaign instead of the June 15, 2020 Tesseract Campaign.

53.     Mr. Eichelberger repeated this false claim in another statement, "Altdynamic has
copied my 7Lo and 8Lo designs as well."

### Mr. Eichelberger's 7:17pm June 18, 2020 Private Message

54.     At approximately 7:17pm on June 18, 2020, Mr. Eichelberger sent a private
message to Plaintiffs via Kickstarter's messaging interface, which alleged that Plaintiffs had
copied Mr. Eichelberger's design, that Mr. Eichelberger had secured copyright protection, and that
accordingly, Mr. Eichelberger was the rightful "proprietors" of the products sold by Plaintiffs'
June 15, 2020 Tesseract campaign. Mr. Eichelberger demanded that Plaintiffs terminate the June
15, 2020 Tesseract campaign and destroy all copies of Plaintiffs tesseract desktop sculpture. Mr.
Eichelberger threatened legal action if Plaintiffs did not comply within three days. *See Exhibit G.*

### Mr. Eichelberger's 8:07pm June 18, 2020 Post on R/legaladvice

55.     R/legaladvice is a widely popular subreddit with more than 1.3 million subscribers
and an unknown number of more non-subscribed viewers.

56.     At approximately 8:07pm on June 18, 2020, Mr. Eichelberger published the
following libelous statement in the publicly-accessible subreddit "r/legaladvice" ("Mr.
Eichelberger's June 18, 2020 r/legaladvice Post"). *See Exhibit H.*



### Mr. Eichelberger's June 18, 2020 Reddit Comments

57.     On June 18, 2020, Mr. Eichelberger published numerous libelous comments in the publicly-accessible section of his previous post, ("Mr. Eichelberger's June 18, 2020 Reddit comments"), for example: "[Plaintiffs'] sculpture is an exact replica. They show the measurements of the features and they are exactly the same"; "they word for word copied my tagline of 'world first CNC machined hyper cube / Tesseract'"; and "[t]here are special proportions to the designs to create a special effect. They have copied these exact portions." These statements were materially false and misleading.

### The June 19, 2020 r/Mywalletisready Comment

58.     On June 19, 2020, Mr. Eichelberger falsely accused the June 15, 2020 Tesseract Campaign of being a "rip off" of Mr. Eichelberger's Hyper Campaign by publishing a public comment to a Reddit post on the r/Mywalletisready subreddit, which identified the June 15, 2020 Tesseract Campaign. *See Exhibit I.*

### The 10:06am June 19, 2020 r/Kickstarter Post

59.     r/Kickstarter is a widely popular subreddit with 60,000+ subscribers and untold non-subscribed viewers.

60.     At approximately 10:06 am on June 19, 2020, Mr. Eichelberger published the following libelous statement in the publicly-accessible subreddit "r/Kickstarter" (the "June 19, 2020 r/Kickstarter Post"). *See Exhibit J.*



<u>**Mr. Eichelberger's June 19, 2020 Reddit Comments**</u>

61.    On June 19, 2020, Mr. Eichelberger published several libelous comments ("Mr. Eichelberger's June 19, 2020 Reddit comments") in the publicly-accessible section of the June 19, 2020 r/Kickstarter Post, (1) alleging that the June 15, 2020 Tesseract Campaign copied Mr. Eichelberger's Hyper Campaign including the product itself, the tagline for the product, and "video shots" advertising the product; (2) calling the June 15, 2020 Tesseract Campaign a "ripoff project"; and (3) threatening to sue Plaintiffs for copyright infringement.

62.    To falsely gain credibility and sympathy with the Reddit community, Eichelberger fraudulently claimed that he had "filed over a dozen patents and been awarded most of them." Per the United States Patent and Trademark Office, as of the date of this filing, Mr. Eichelberger has never been awarded any patent.

## The June 23, 2020 Letter

63.     On June 23, 2020, Mr. Eichelberger sent a letter to Plaintiffs (the "June 23, 2020 letter") in an attempt to extort concessions from them. *See Exhibit K.* Mr. Eichelberger demanded that Plaintiffs (1) "stop using the domain of www.mathmeetsmachine.com" (which is a domain that Plaintiffs rightfully bought and which had no prior owners); (2) change the tagline of the June 15, 2020 Tesseract Campaign; (3) distribute Plaintiffs' marketing trade secrets to Mr. Eichelberger; and (4) make public statements to Mr. Eichelberger's benefit and Plaintiffs' detriment regarding the similarity of Plaintiffs' and Mr. Eichelberger's Kickstarter campaigns. If Plaintiffs did not agree to these terms, Mr. Eichelberger threatened legal action based on an alleged copyright infringement. Lastly, Mr. Eichelberger repeatedly conceded that his campaigns were ineffective and less successful compared to Plaintiffs' corresponding campaigns.

64.     The June 23, 2020 letter further admitted that Mr. Eichelberger's 3LO Campaign was created after Plaintiffs' corresponding November 1, 2018 PentaOrbiform campaign. The June 23, 2020 letter falsely stated that Plaintiffs' "Möbius strip, sphere, Reuleaux Heptagon, and now Hypercube/Tesseract" ran at the same time or after Mr. Eichelberger's corresponding campaigns.

## Subsequent Conduct and Statements by Mr. Eichelberger

65.     Plaintiffs' counsel informed Mr. Eichelberger that his statements and conduct were illegal. On June 24, 2020, Mr. Eichelberger deleted the June 19, 2020 r/Kickstarter post from Reddit and his comments on the remaining thread. The title of the post, the thread history, and subsequent comments between various Reddit users remain. Mr. Eichelberger commented in this reddit thread: "I publicly apologize and disavowed my previous statements." This statement did not cure the harm caused by his prior statements because, among other things: (1) after Mr. Eichelberger deleted his initial comments, it is unclear which of his statements he publicly

apologizes and disavows, which only compounded the confusion; (2) Reddit users do not frequently re-visit comment threads after the initial discussion; (3) Mr. Eichelberger's subsequent comment was not posted in response to any of his previous comments to other users or posted in response to the other users' comments themselves, so no users would have been alerted of Mr. Eichelberger's subsequent activity on the thread; and (4) his initial libelous statements are still publicly accessible on archived versions of Reddit.com. In some archived sources, his subsequent apology is not even accessible to be associated with the initial post.

66.     Mr. Eichelberger also deleted his June 18, 2020 r/legaladvice Post, associated comments, and his June 19, 2020 r/Mywalletisready Statement. Mr. Eichelberger did not apologize or recant his false statements. Additionally, these libelous statements are still publicly accessible on archived versions of Reddit.com.

67.     Mr. Eichelberger unbacked the June 15, 2020 Tesseract Campaign. Accordingly, Mr. Eichelberger could no longer comment on the June 15, 2020 Tesseract Campaign webpage. However, Mr. Eichelberger's tortious and libelous comments were still publicly available for anyone to view. The responses to his comments, which repeat some of the content, are still viewable to this day; and many responders broke contractual relations with Plaintiffs and unbacked the June 15, 2020 Tesseract Campaign. In fact, when choosing to back a Kickstarter, many individuals first review the comments of those who unbacked the campaign.

## HARM TO PLAINTIFFS

68.     The publication of these statements and advertisements by Mr. Eichelberger directly and proximately caused substantial and permanent damage to Plaintiffs.

69.     As a direct and proximate result of Mr. Eichelberger's publication of these statements:

a.      Plaintiffs suffered permanent, perpetual harm to their reputation;

b.      Plaintiffs suffered and will continue to suffer emotional and mental distress;

c.      Plaintiffs forever lost customers and customer lifetime value; and

d.      Plaintiffs suffered financial damage.

70.     Mr. Eichelberger published his statements with both actual malice and common law malice, thereby entitling Plaintiffs to an award of punitive damages.

71.     As a direct and proximate result of these statements, Mr. Eichelberger created a false reputation for Plaintiffs, which is publicly accessible. This false reputation is publicly accessible at least on Google and other search engines, in Reddit post history, Kickstarter post history, and other internet archiving services.

72.     As a direct and proximate result of these statements, third-parties were falsely convinced of said false reputation.

73.     As a direct and proximate result of these statements, the crowd-funding for the June 15, 2020 Tesseract Campaign substantially decreased in funding rate, directly on the day of Mr. Eichelberger's comments and subsequently thereafter. The campaign failed to recover. Many days passed without a donor, or with individuals retracting their pledges. On July 14, 2020, when the campaign ended, only $33,880 was raised. Only $6,238 funding of this total was raised after Mr. Eichelberger's comments.

74.     By contrast to the funding record for the June 15, 2020 Tesseract Campaign, the funding records for Plaintiffs' February 18, 2018 Orbiform Campaign; November 1, 2018 PentaOrbiform Campaign; April 20, 2019 Möbius Campaign; and September 21, 2019 Dodecahedron Campaign had new donors every day. The February 4, 2020 Sphere Campaign had new donors on 52 of 57 days. Further, Plaintiffs' campaigns typically started with a high amount

of funding from customers, and, by the third to fifth day of the campaign, reached a relatively stable amount of donations per day which would persist until the end of the campaign. In addition, on average, between 70% to 85% of total campaign donations for Plaintiffs' prior Kickstarter campaigns were received after this third to fifth day stabilization.

75.     On the third day of the campaign, Plaintiffs raised approximately $3,600. On the fourth day of the campaign, when Mr. Eichelberger's tortious comments began, Plaintiffs only raised $1,032. The average daily donation after Mr. Eichelberger's tortious comments was even lower, and, accordingly, Plaintiffs suffered severe economic injury from Mr. Eichelberger's tortious comments.

76.     Because the June 15, 2020 Tesseract Campaign was severely impacted by Mr. Eichelberger's tortious comments, Plaintiffs was unable to finance auxiliary items and accessories, and was unable to take advantage of further beneficial externalities afforded by economies of scale.

77.     All conditions precedent to this lawsuit have occurred, been satisfied or been waived.

## COUNT 1
### Libel Per Se

78.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

79.     Defendant's false and misleading published statements materially injured Plaintiffs' established good business reputations by impugning their integrity and method for doing business.

80.     Mr. Eichelberger alleged in various written statements that he had a copyright and that the June 15, 2020 Tesseract Campaign infringed said copyright. Mr. Eichelberger's tesseract design cannot be protected by U.S. copyright because the design is a publicly-known shape, which

existed centuries before the present dispute. Additionally, even if Mr. Eichelberger had a copyright (which would be limited to Mr. Eichelberger's specific design as shown in the Mr. Eichelberger's Hyper Campaign), the copyright registration would not cover Plaintiffs' tesseract desktop sculptures because the two designs differ significantly. Therefore, Mr. Eichelberger falsely accused Plaintiffs of infringing a copyright, an illegal behavior.

81.     By reason of these acts, Plaintiffs has suffered substantial injury, including but not limited to financial loss in excess of $1 million. By reason of Mr. Eichelberger's libel per se, Plaintiffs is entitled to both all actual, compensatory, and punitive damages proved at the time of trial.

82.     Mr. Eichelberger knew that his allegations were false, and he made these comments with express and implied malice. Mr. Eichelberger knew or should have known that such statements were false when he published them. Nonetheless, Mr. Eichelberger published such false statements recklessly and in conscious disregard of the truth. Further, Mr. Eichelberger committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to defame and injure Plaintiffs. Plaintiffs, therefore, seeks an award of actual, compensatory, and punitive damages in an amount to be proven at trial.

## COUNT 2
### Libel

83.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

84.     Defendant's false and misleading published statements materially injured Plaintiffs' established good business reputations by impugning their integrity and method for doing business.

85.     Mr. Eichelberger stated in writing that "this is a blatant rip off of my current Kickstarter" in the 5:44pm June 18, 2020 Statement. Mr. Eichelberger also referred to Plaintiffs' product as a "ripoff" in other published statements. "Rip-off" means "an act or instance of stealing" and/or "a usually cheap exploitative imitation."[5] This verifiable term was and is demonstrably false: (1) Plaintiffs did not steal Mr. Eichelberger's product and, further, Plaintiffs had created the fully-machined perspective tesseract at least as early as April 29, 2020, before Mr. Eichelberger began the Hyper campaign; and (2) Plaintiffs' tesseract product was not "a usually cheap exploitative imitation" of Mr. Eichelberger's product because Plaintiffs' "true perspective" tesseract requires more complicated and precise machining than the inferior and different design produced by Mr. Eichelberger, and Plaintiffs' resultant tesseract is, in fact, more expensive.

86.     In the June 18, 2020 r/legaladvice Reddit comment, Mr. Eichelberger stated, "A Kickstarter just raised $27,000 today for my design." Plaintiffs did not sell or advertise Mr. Eichelberger's design. Accordingly, the statement "A Kickstarter just raised $27,000 today for my design" is factually false.

87.     Mr. Eichelberger alleged in various published statements that Plaintiffs copied the tesseract product of Mr. Eichelberger's Hyper Campaign and copied taglines of Mr. Eichelberger's Hyper Campaign. These allegations are provably false: the two designs differ substantially; the sizes offered are not the same; and the taglines are not "exactly the same".

88.     On June 18, 2020, Mr. Eichelberger alleged in several comments that Plaintiffs copied Mr. Eichelberger's previous campaigns. To the contrary, Mr. Eichelberger actually knew that those statements were false and misleading.

---

[5]     "Rip-off," MERRIAM-WEBSTER.COM DICTIONARY, https://www.merriam-webster.com/dictionary/rip-off.

89.     Mr. Eichelberger published these various statements to give current and prospective customers a false factual basis about Plaintiffs.

90.     By reason of these acts, Plaintiffs has suffered substantial injury, including but not limited to financial loss in excess of $1 million. By reason of Mr. Eichelberger's libel, Plaintiffs are entitled to actual, compensatory, and punitive damages proved at the time of trial.

91.     Mr. Eichelberger knew that his allegations were false, and he made these comments with express and implied malice. Mr. Eichelberger knew or should have known that such statements were false when he published them. Nonetheless, Mr. Eichelberger published such false statements recklessly and in conscious disregard of the truth. Further, Mr. Eichelberger committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to defame and injure Plaintiffs. Plaintiffs, therefore, seek an award of actual, compensatory, and punitive in an amount to be proven at trial, but not less than $3 million.

## COUNT 3
### Tortious Interference with Business Relations

92.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

93.     At the time of Mr. Eichelberger's wrongful acts as alleged herein, Plaintiffs had business relations with the customers who had pledged to his campaign, as well as business relations with former customers who repeatedly pledged to his campaign, as well business relations with prospective customers who signed to 'watch' Plaintiffs' campaign.

94.     Mr. Eichelberger was aware of these relationships because he visited the June 15, 2020 Tesseract Campaign and previous Kickstarter campaigns run by Plaintiffs. Mr. Eichelberger observed that customers had pledged to said campaigns. Mr. Eichelberger was also aware of the

nature of these relationships because Mr. Eichelberger had run several Kickstarter campaigns himself.

95.     Mr. Eichelberger intentionally and unjustly interfered with Plaintiffs' existing and prospective business relations by publicly accusing Plaintiffs of copying Mr. Eichelberger's campaign, publicly accusing Plaintiffs of stealing and copying Mr. Eichelberger's Hyper Campaign, and using the June 15, 2020 Tesseract Campaign to promote Mr. Eichelberger's Hyper Campaign.

96.     As a direct and proximate result of Mr. Eichelberger's interference, Plaintiffs has suffered substantial injury, including, but not limited to, damages in connection with the June 15, 2020 Tesseract Campaign. Further, Mr. Eichelberger committed such acts maliciously, oppressively, and fraudulently, with ill will and an evil intent to damage Plaintiffs. Plaintiffs, therefore, reserves the right to seek an award of actual, compensatory, and punitive damages in an amount to be proven at trial, but not less than $3 million.

## COUNT 4
### Tortious Interference with Contract

97.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

98.     Individuals who contributed to any of Plaintiffs Kickstarter campaigns, including Plaintiffs June 15, 2020 Tesseract Campaign, formed a valid contract between Plaintiffs and said individuals.

99.     Mr. Eichelberger had knowledge of said contracts.

100.     Mr. Eichelberger intentionally and unjustifiably interfered with Plaintiff's rights under said contracts by inducing individuals to terminate said contracts.

101.     Mr. Eichelberger had no legal justification for his actions.

102.    Plaintiffs have suffered reputational and financial damages as a result of the improper interference with and resulting termination of said contracts.

## COUNT 5
### 15 U.S.C. § 1125(a)

103.    Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

104.    Plaintiffs are engaged in commerce within the control of Congress because Plaintiffs have a cognizable commercial interest in reputation or sales and falls within the zone of interest protected by 15 U.S.C. 1125(a). Mr. Eichelberger knowingly, or with reckless disregard, made material false and/or misleading statements of fact in interstate commerce in connection with commercial advertising or solicitation. Mr. Eichelberger made these comments in the promotion and advertising of Mr. Eichelberger's products.

105.    Mr. Eichelberger's statements, outlined in part above, are not only literally false, but are also misleading when considered in their full context. Mr. Eichelberger substantially injured Plaintiffs' business reputation by leading Plaintiffs' current and prospective customers to believe Mr. Eichelberger's false statements of facts, at least including Mr. Eichelberger's false statements regarding characteristics and features of the June 15, 2020 Tesseract Campaign, false statements regarding Plaintiffs' marketing materials, and false statements that Plaintiffs are engaged in unlawful or illegal conduct. Mr. Eichelberger falsely accused Plaintiffs' February 18, 2018 Orbiform Campaign; November 1, 2018 PentaOrbiform Campaign; April 20, 2019 Möbius Campaign; and February 4, 2020 Sphere Campaign as copying Mr. Eichelberger's subsequently-produced and inferior products.

106.     Mr. Eichelberger made these statements in connection with the sale, offering for sale, distribution, advertising, and promotion of Mr. Eichelberger's Hyper Campaign and all of Mr. Eichelberger's past, present, and future products.

107.     Mr. Eichelberger made many of these statements directly to Plaintiffs' current and prospective customers. Mr. Eichelberger also made these statements to the general public.

108.     Such allegations were likely to cause confusion, to cause mistake, and/or to deceive Plaintiffs' potential and current customers. These statements actually deceived Plaintiffs' potential and current customers because Plaintiffs' can establish that customers broke contractual relations with Plaintiffs.

109.     Mr. Eichelberger demonstrated deliberate intent to trade off Plaintiffs' goodwill as a means of increasing Mr. Eichelberger's sales and profits at the expense of consumers and Plaintiffs.

110.     Plaintiffs suffered an injury to commercial and reputational interests based on Mr. Eichelberger's misrepresentation, false, and deceptive statements about Plaintiffs. Mr. Eichelberger's misrepresentation, false, and deceptive statements are violations of 15 U.S.C. § 1125(a) and are the direct and proximate cause of Plaintiffs' actual injuries.

111.     Mr. Eichelberger's conduct has been willful, justifying up to treble damages and an award of Plaintiffs' reasonable attorneys' fees.

### **COUNT 6**
**Florida Deceptive And Unfair Trade Practices Act (Fla. Stat. §§ 501.201-213)**

112.     Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

113.    As outlined above, Mr. Eichelberger's statements specified by the paragraphs incorporated in this Count constitute unfair and deceptive acts or practices in the conduct of trade or commerce in violation of Fla. Stat. § 501.204.

114.    Mr. Eichelberger's acts of unfair competition have caused and are likely to continue to cause confusion and mistake, and to deceive Plaintiffs' current and prospective customers and the public.

115.    Mr. Eichelberger's acts of unfair competition have caused and are likely to continue to cause substantial injury to Plaintiffs', and have damaged and are likely to continue to damage Plaintiffs' business, goodwill and reputation, all to Plaintiffs' irreparable injury and to the injury of the public. Plaintiffs' have been damaged directly and proximately by Mr. Eichelberger's unlawful actions.

116.    Mr. Eichelberger has obtained gains, profits and advantages as a result of his unlawful acts.

117.    Mr. Eichelberger's conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate.

## COUNT 7
### Trade Libel

118.    Plaintiffs reassert and incorporate by reference paragraphs 1 through 77 of this Complaint as if fully restated herein.

119.    As set forth above, Mr. Eichelberger published falsehoods, which are openly and freely communicated to each third party visiting Plaintiffs' June 15, 2020 Kickstarter page and the identified Reddit posts. These falsehoods are directed at Plaintiffs' customers and those considering buying from Plaintiffs.

120.    Mr. Eichelberger knew or reasonably should have known that his advertising and marketing efforts, including his use of falsehoods, would likely result in inducing others not to deal with Plaintiffs.

121.    In fact, Mr. Eichelberger's falsehoods do play a material and substantial part in inducing others not to deal with Plaintiffs, as set forth by example above.

122.    As the matters alleged above show, Plaintiffs suffered injury because of Mr. Eichelberger's publication of false statements, which tends to be prejudicial against Plaintiffs' conduct of a trade or business, tends to disparage Plaintiffs' products, and tends to deter third persons from dealing in business with Plaintiffs.

123.    As a result of Mr. Eichelberger's publication of the false and defamatory matter, Plaintiffs were greatly injured in reputation and credit. Plaintiffs' business has suffered great loss of customers, and has been deprived of great gains and profits, which otherwise Plaintiffs would have made, and has otherwise sustained loss and injury, to Plaintiffs' damage in an amount to be proven but regardless exceeding $1,000,000.

124.    Mr. Eichelberger's conduct complained of herein is malicious, fraudulent, knowing, willful, and deliberate.

WHEREFORE, Plaintiffs respectfully pray that this Court:

(a)    Issue orders, in a form consistent with Rule 65(d) of the Federal Rules of Civil Procedure, permanently enjoining the defendant and his agents, servants, employees, and attorneys, and those persons in active concert or participation with any of them, who receive actual notice of the order by personal service or otherwise, and each of them, from violating the laws against libel, tortious interference with business relations, and tortious interference with contract.

(b)     Enter judgment against Mr. Eichelberger for substantial compensatory  and actual damages in an amount not less than $1,000,000;

(c)     Enter judgment against Mr. Eichelberger for treble damages in an amount not less than $3,000,000;

(d)     Order Mr. Eichelberger to pay Plaintiffs' reasonable attorneys' fees and expenses;

(e)     Order trial by jury on all triable issues, which the Plaintiffs hereby demand consistent with Federal Rule of Civil Procedure 38;

(f)     That all costs of this action be taxed to Mr. Eichelberger, consistent with Local Rule 47.1; and

(g)     That the Court grant all such other and further relief that the Court deems just and proper, including equitable relief.

## DEMAND FOR JURY TRIAL

Plaintiffs demand trial by a jury on all issues so triable.

DATED:  September 17, 2020              Respectfully submitted,

**LEVINE KELLOGG LEHMAN
SCHNEIDER + GROSSMAN LLP**
201 South Biscayne Boulevard
Citigroup Center, 22nd Floor
Miami, FL 33131
Telephone:  (305) 403-8788
Facsimile:  (305) 403-8789

By: /s/Jason Kellogg
JASON KELLOGG, P.A.
Florida Bar No. 0578401
Primary: jk@lklsg.com
Secondary: ah@lklsg.com

ROTHWELL, FIGG, ERNST &
MANBECK, P.C.
607 14th Street, N.W. – Suite 800
Washington, D.C.  20005
Tel:  (202) 783-6040
Fax:  (202) 783-6031

By: /s/Christopher A. Ott
CHRISTOPHER A. OTT (*pro hac vice* pending)
Email: cott@rothwellfigg.com
EMILY N. SANDHAUS (*pro hac vice* pending)
Email: esandhaus@rothwellfigg.com

*Attorneys for Plaintiff*